UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.

ANDREW Q. GARNER,

        Defendant.

19-CR-54
DECISION & ORDER

On May 30, 2019, this Court held a final pretrial conference and heard the parties' arguments on pretrial motions and motions in limine. Docket Item 61. At that conference, the Court denied the pretrial motions of the defendant, Andrew Q. Garner, to dismiss the indictment on First and Fifth Amendment grounds. *Id.* The Court also indicated that it was inclined to deny Garner's motion to strike surplusage from the indictment but permitted him to submit caselaw in further support of his position. *Id.* The Court reserved decision on the defense motions to preclude evidence that Garner violated a protective order and to dismiss the indictment because of an allegedly erroneous reference to such protective order at, or other defects in, the grand jury proceedings. *Id.* The Court then ordered the government to produce the entire transcript of the grand jury proceedings for *in camera* review. Docket Item 60.

The Court has now carefully reviewed all submissions in connection with the pretrial motions and motions in limine, as well as the grand jury transcript. For the reasons that follow, the Court denies the defendant's motion to strike surplusage in the indictment, grants the defendant's motion to preclude evidence of the protective order in

part and denies it in part, and denies the defendant's motion to dismiss the indictment because of defective grand jury proceedings.

## I. SURPLUSAGE

Garner argues that 18 U.S.C. § 1513(e) does not apply to his conduct that the government has charged. Under § 1513(e),

> Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1513(e). According to Garner, this subsection encompasses only *economic* harm, such as the example it provides: "interference with the lawful employment or livelihood of any person." *Id.* Garner argues that the broad prohibition of "any action harmful" does not include a threat of bodily injury because subsection (b) specifically covers causing bodily injury or threatening to cause such harm. 18 U.S.C. § 1513(b). Thus, according to Garner, reading subsection (e) to cover threats of bodily injury renders subsection (b) superfluous.

Although Garner's argument is creative, Garner has not provided—and the Court has not found—legal authority for his proposed interpretation of the statute. By its explicit terms, the statute covers "any action harmful," not simply action causing economic harm. And by using the word "including" and then discussing economic harm, Congress illustrated but did not limit the reach of the statute.

Garner's counsel cites the legislative history of § 1513(e), which suggests that it was intended to apply in whistleblower cases. But only one case, *United States v. Sergentakis*, 2015 WL 3763988 (S.D.N.Y. June 15, 2015), seems to provide any

support at all for Garner's position. In that case, a defendant convicted of bribery, mail fraud, and conspiracy was charged under § 1513(e) with mailing letters to executives at his former—and the witness's current—employer and publishing false statements online that the witness was a pedophile. The case thereby applied subsection (e) to a situation involving the witness's reputation—and, thus, economic harm. *Id.* But the fact that the statute reaches economic harm does not mean that it is limited to economic harm.

In fact, other cases that Garner has provided to the Court seem to cut against his argument. In *United States v. Edwards*, 291 F.Supp.3d 828 (S.D. Ohio 2017), for example, the defendant was charged under § 1513(e) in connection with conduct almost indistinguishable from that with which Garner is charged: posting on Facebook that a witness was a "snitch." Similarly, in *United States v. Stoker*, 706 F.3d 643 (5th Cir. 2013), the defendant was charged under § 1513(e) for mailing a witness a copy of an investigation report from prison, hardly a threat of only economic harm. In fact, the court in that case held that "[s]ection 1513(e) broadly condemns a wide range of retaliatory actions that may inflict only emotional or economic harm"—not that § 1513(e) was limited to economic harm. *Stoker*, 706 F.3d at 648. In sum, there is no precedent interpreting the law the way Garner suggests.

What is more, Garner has not given the Court a viable procedural vehicle for his motion. He concedes that by tracking the statute, the indictment sufficiently charges the crime. His argument therefore seems akin to a motion for summary judgment in a civil case. But that is not well taken in a criminal case, where there is no counterpart to a motion for summary judgment. *See* FED. R. CRIM. P. 12(b). So even if Garner were

3

correct in his interpretation of the statute, he has at best raised a potential Rule 29 issue for trial or afterward.

In sum, it does not appear that any court has held subsection (e) to encompass only economic harm, and this Court declines to be the first. And that is especially so because Garner raises this argument in a pretrial motion. Garner's motion to strike surplusage and dismiss the indictment because § 1513(e) does not encompass his conduct is therefore denied.

## II.    EVIDENCE OF THE VIOLATION OF A PROTECTIVE ORDER

Garner also moves to exclude evidence related to the claim that the materials he allegedly disseminated or posted on Facebook also violated a protective order. Docket Item 48-1. The government responds that evidence about the protective order is necessary to show Garner's retaliatory intent: the government asserts that Garner well knew that the government was concerned about retaliation because it sought and obtained an order to protect its witnesses. Docket Item 58 at 7-8.

As this Court stated at the final pretrial conference, there is a difference between evidence of the protective order and evidence of the alleged violation of the protective order. Evidence about the protective order may be admissible to show purpose and intent as the government argues. But evidence that Garner violated the protective order is an uncharged act with limited relevance and serious risk of prejudice: the risk that the jury will draw the unfairly prejudicial inference that because Garner violated a protective order, he likely retaliated as well. That risk of unfair prejudice substantially outweighs the probative value of the evidence. *See* Fed. R. Evid. 403.

Moreover, even evidence that a protective order existed is relevant only to material that the order covered. The protective order in 17-CR-49 covered "grand jury transcripts, witness statements, and criminal history records for Protected Witness 1, Protected Witness 2, and Protected Witness 3." *United States v. Pacheco, et al.*, 17-CR-49 (W.D.N.Y. filed Mar. 2, 2017), Docket Item 117. That list of witnesses includes one of the alleged targets of Garner's actions here, R.L., but not the other, J.P. That apparently is because the protective order was prepared before, and issued on the same day that, J.P. pleaded guilty and agreed to testify against Garner, but the government did not ask the Court to amend the protective order to include material related to J.P.

Therefore, the protective order did not cover material related to J.P., and the government admits as much in its trial brief. Docket Item 18 at 5. So the government may not offer evidence or argue that material related to J.P. was covered by the protective order.

The defendant's motion to preclude evidence of the protective order is therefore granted as it pertains to any alleged violations of the protective order or to material or persons—including J.P.—not covered by the protective order. It is otherwise denied. Of course, this does not preclude the defendant from raising any objections to the admission of any such evidence at trial.

### III. DISMISSING THE INDICTMENT

Finally, Garner argues that the government's reference to the protective order during the grand jury proceedings prejudiced him and requires dismissal of the

5

indictment based on the Court's supervisory powers over grand jury proceedings. Docket Item 48-1 at 12-13.

Two basic rules govern a court's limited role in regulating grand jury proceedings. First, "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 414 U.S. 338, 345 (1974); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988) ("[T]he mere fact that evidence . . . is unreliable is not sufficient to require a dismissal of the indictment."). Second, the grand jury's investigative and institutional freedom require that "federal courts must have relatively limited authority to intrude on a grand jury investigation." *United States v. Fisher*, 225 F.Supp.3d 151, 163 (W.D.N.Y. 2016). "[C]ourts must carefully identify the nature of alleged grand jury misconduct, because 'a complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was incomplete or misleading." *Id.* at 166 (quoting *United States v. Williams*, 504 U.S. 36, 54-55 (1992)).

In *United States v. Williams*, 504 U.S. 36 (1992), the Supreme Court rejected the argument that a federal court may impose a constitutional obligation on a prosecutor to present the grand jury with exculpatory evidence. "Put differently, a court may not, under the guise of imposing a procedural rule, invoke its supervisory authority to limit the type of evidence the grand jury has historically been permitted to consider, nor may a court regulate the way in which the grand jury receives that evidence." *Fisher*, 225 F.Supp.3d at 164. On the other hand, a federal court may use its "supervisory power . . . to dismiss an indictment because of misconduct before the grand jury, at least

where that misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme Court] and by Congress to ensure the integrity of the grand jury's functions." *Williams*, 504 U.S. at 46 (internal quotations omitted). "A federal court may therefore use its supervisory authority over the grand jury only to 'enforce[e] or vindicat[e] legally compelled standards'—not 'as a means of *prescribing* those standards of prosecutorial conduct in the first instance.'" *Fisher*, 225 F.Supp.3d at 164 (quoting *Williams*, 504 U.S. at 46-47) (emphasis in original).

Garner relies on *United States v. Hogan*, 712 F.2d 757 (2d Cir. 1983), and *United States v. Asdrubal-Herrera*, 470 F. Supp. 939 (N.D. Ill. 1979), for the proposition that an inadvertent misrepresentation—here, the fact that the protective order covered J.P.—can justify dismissing the indictment. In *Hogan*, however, the government attorney had engaged in what the Second Circuit termed "flagrant and unconscionable" conduct, calling the defendant a "real hoodlum" who they should indict "as a matter of equity." *Hogan*, 712 F.2d at 761-62. In *Asdrubal-Herrera*, the court dismissed the indictment based on the "totality of the circumstances" and the "negligent conduct of the United States and its agents" that "polluted the waters of justice" and led the grand jury "to believe that the defendant was engaged in other illegal activity." 470 F. Supp. at 942-43 (internal quotations omitted). Neither of those circumstances occurred here.

And regardless of whether *Hogan* or *Asdrubal-Herrera* are factually distinct from Garner's case, "after [the Supreme Court's 1992 decision in] *Williams*," even the conduct in those cases is "likely not the type of misconduct that can lead to dismissal." *Fisher*, 225 F.Supp.3d at 168. While some conduct, such as subornation of perjury or introduction of unsworn testimony, would violate "one of those few, clear rules which

were carefully drafted and approved by [the Supreme Court] and by Congress to ensure the integrity of the grand jury's functions," *Williams*, 504 U.S. at 46, negligently leading the grand jury to believe the defendant had engaged in other illegal activity or even calling him a "hoodlum" likely do not provide a basis for dismissal after *Williams*. *See Fisher*, 225 F.Supp.3d at 168.

Here, the prosecutor raised the topic of the protective order and may well have given the grand jury the false impression that the protective order covered J.P., that Garner had violated it, and that violating the protective order amounted to violating the statute. Nevertheless, and even if that questioning may have affected the grand jury, *Williams* "severely curtailed the ability of the federal courts to fashion remedies based upon their supervisory powers." *United States v. Myers*, 123 F.3d 350, 356 (6th Cir. 1997). And to the extent that portions of *Hogan* and *Asdrubal-Herrera* survive *Williams*, it is clear that the conduct here did not meet the level of misconduct in those cases. Garner's motion to dismiss the indictment on these grounds is therefore denied.

The conclusion that grand jury irregularities do not compel dismissal of the indictment should not be read as an endorsement of the government's grand jury presentation, however. In fact, before the grand jury and before this Court, the government has taken the untenable position that the protective order issued by this Court covered the witness referred to as J.P. While the prosecutors—and perhaps defense counsel at Garner's earlier trial—may have assumed that the protective order covered J.P., it clearly did not. By its own terms, the order covered only certain named witnesses, and J.P. was not among them. After J.P. pleaded guilty and was added to the list of witnesses who would testify against Garner at his first trial, the government

8

never prepared a protective order covering J.P., nor did the government ask this Court to deem J.P. covered by the protective order issued earlier.

Even worse, the government misrepresented this fact to United States Magistrate Judge Michael J. Roemer. The affidavit supporting the criminal complaint against Garner incorrectly stated that Garner disseminated materials in violation of a protective order. Docket Item 1 at 6-7.

Then, despite the irrelevance of the protective order, the prosecutor raised the topic of the protective order at the grand jury proceedings. A grand juror was clearly interested in how the defendant obtained material at issue and asked a question about that, but that question was fully answered before the prosecutor mentioned the protective order. And when he addressed the protective order, the prosecutor went too far. What is more, the prosecutor apparently did not explain the elements of the offense to the grand jury or what weight—if any—to give the testimony about the protective order. Instead, the prosecutor simply read the grand jury the indictment, thus taking the risk that the grand jury voted to return the indictment because they equated violating the protective order with violating the law.

Although none of that justifies the drastic remedy of dismissing the indictment against Garner, the government should be mindful that such misrepresentations are precisely the type of misconduct that might well result in reprimand—or worse—in the future.

## **CONCLUSION**

For the reasons stated above, the Court denies the defendant's motion to strike surplusage in the indictment, grants the defendant's motion to preclude evidence of the protective order in part and denies it in part, and denies the defendant's motion to dismiss the indictment because of allegedly defective grand jury proceedings.

SO ORDERED.

Dated: June 26, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE